**United States District Court**
**District of Minnesota**

RECEIVED BY MAIL

JAN 25 2024

CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Kenneth Daywitt,
       **Plaintiff,**

v.

Jodi Harpstead- DHS Commissioner,
Nancy Johnston-MSOP Exec. Director,
Douglas Latuseck – Deputy Exec.
Director, Carol Clark- Former St. Peter
Volunteer Services Coordinator, Noah
Paro-Former Interim Volunteer
Services Coordinator, Tanya Leskey-
Clinical Programming Director, Jessica
Nies-Clinical Programming Director
and Brenda Todd-Bense- Facility
Clinical Director working in part in
capacity of Clinical Programming
Director in their individual and Official
Capacities,

       **Defendants.**

**Court File No. Pending**

24-cv-214 JRT/TNL

**Complaint Brought in
Accordance with §§1983,1985,
and 1988**

SCANNED

JAN 25 2024

U.S. DISTRICT COURT MPLS

## INTRODUCTION

This action brought by Kenneth Daywitt, a member of the Jewish faith, who is

civilly committed to the Minnesota Sex Offender Program (MSOP), against Defendants

for violations of Plaintiff's constitutional and  statutory rights pursuant to 42 U.S.C.

§§1983, 1985, and 1988:  (1) the right to Freedom of Expression, (2) Equal Protection

under the Fourteenth Amendment, (3) to be free from inhumane treatment in violation of those rights , and (4) Free Exercise under the First Amendment.

It is alleged Defendants have violated and continue to violate Plaintiff's constitutional rights under the First and Fourteenth Amendments to the United States Constitution and RLUIPA by interfering with Plaintiff's right to practice his sincerely held religious beliefs and infringing upon his mental well-being.

The United States of America was founded on the backbones of men of faith, it was for this reason the First Amendment to the United States Constitution was implemented. Yet, this very important, foundational principle is being denied to Mr. Daywitt, for no reason other than MSOP's unconstitutional *spiritual practices policy* stating there must be at least six persons to form a religious/spiritual group which would afford Plaintiff the luxury of enjoying any of the precepts that the policy allows for other religious/spiritual groups.

## PROCEDURAL BACKGROUND

Plaintiff is currently housed at MSOP in St. Peter, Minnesota pursuant to Minn. Stat. § 253D et. seq. There have been several complaints filed against numerous MSOP employees, in both federal and state court, by patients in the MSOP for violations of religious rights. The complaint declares violations of Plaintiffs' civil rights pursuant to 42 U.S.C. § 1983, 1985, and 1988.

## NATURE OF THE ACTION

Plaintiff brings his action declaring violations of constitutional, statutory, and common law rights. Specifically, Plaintiff declares Defendants, in their official and individual capacities, have, among other things:

    a. **denied Plaintiff the right to acceptably express his religious rights, in violation of the First Amendment to the United States Constitution, the Minnesota Constitution, Minnesota Rules and RLUIPA;**

    b. **deprived Plaintiff the ability to practice the dictates of his faith as others similarly situated in violation of Equal Protection under First and Fourteenth Amendment to the United States Constitution and RLUIPA;**

    c. **denied Plaintiff the right to be free from inhumane treatment in violation of Fourteenth Amendment to the United States Constitution, Minnesota Rules and the Minnesota Constitution; and**

    d. **denied Plaintiff the right to Freely Exercise his religious rights in violation of the First and the Fourteenth Amendments as implied under the Equal Protection Clause of the United States Constitution.**

Plaintiff seeks injunctive and punitive relief for these constitutional, statutory, and common law violations. Plaintiff also seeks compensatory and actual or nominal damages based on the Defendants' actions in their individual capacity due to violations of Plaintiff's constitutional, statutory, and common law rights.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction for Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because the acts and omissions giving rise to these claims occurred in the State of Minnesota and the Defendants all reside in the State of Minnesota.

## DECLARATORY AND INJUNCTIVE RELIEF

This Court has authority to grant declaratory relief pursuant to 28 U.S.C. § 2201 as an actual controversy exists regarding the rights, privileges, and immunities to which the Plaintiff is entitled while committed to the care and custody of the State of Minnesota. Pursuant to 28 U.S.C. § 2202, this Court has authority to grant injunctive and other necessary and proper relief.

## COMPENSATORY RELIEF

This Court has authority to grant compensatory relief pursuant to 42 U.S.C. § 2000e. as an actual controversy exists regarding the rights, privileges, and immunities to which the Plaintiff is entitled while committed to the care and custody of the State of Minnesota.

## PARTIES

### Plaintiff

1.   Plaintiff Kenneth Steven Daywitt is civilly committed to the MSOP in the care and custody of the Minnesota Department of Human Services for an indefinite period of time.

4

Plaintiff Daywitt is an adherent to Orthodox Judaism.  Since his transfer to St. Peter from Moose Lake in January of 2022, he has been and continues to be injured by the acts and omissions of Defendants.

**Defendants**

2.    Defendant Jodi Harpstead is the Commissioner of Human Services.  Defendant is responsible for the overall operation of the Department.  MSOP is a sub-operation within and under the Department of Human Services (DHS) umbrella.  Therefore, Defendant Harpstead in her official capacity, implemented, retained and carried out policies and actions through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

3.    Defendant Nancy Johnston is the MSOP Executive Director, she is responsible for the day to day operations of the MSOP.  Therefore, Defendant Johnston in her official capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

4.    Defendant Douglas Latuseck is the Deputy Executive Director, he is responsible for the day to day operations of the MSOP.  Therefore, Defendant Latuseck in his official capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

5.    Defendant Carol Clark was the Volunteer Services Coordinator (VSC) at the St. Peter facility who was responsible for ensuring that patients at the St. Peter site are able to

practice the dictates of their faith. Therefore, Defendant Clark in her official and individual capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

6.     Noah Paro was the Interim VSC at the St. Peter facility who was responsible for ensuring that patients at the St. Peter site are able to practice the dictates of their faith. Therefore, Defendant Paro in his official and individual capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

7.     Tanya Leskey was the Clinical Programming Director who was responsible for overseeing the Volunteer Services Coordinator, and was ultimately responsible for ensuring that patients at the St. Peter site are able to practice the dictates of their faith. Therefore, Defendant Leskey in her official and individual capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

8.     Jessica Nies is a Clinical Programming Director who is responsible for ensuring that patients at the St. Peter site are able to practice the dictates of their faith. Therefore, Defendant Nies in her official and individual capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

9.    Brenda Todd-Bense is the Clinical Director of the MSOP at St. Peter.  Todd-Bense worked in the capacity of Clinical Programming Director in the interim of there not being one.   Therefore, Defendant Todd-Bense, in her official and individual capacity, implemented, retained and carried out policies through the MSOP that violated the constitutional, statutory, and common law rights of Plaintiff.

10.    In all respects material to this action, all Defendants acted under the color of law and under the color of their authority as officers and employees of the DHS or the MSOP.

11.    In all respects material to this action, all Defendants acted within the scope of their employment with the DHS/MSOP, but exceeded the legitimate scope of their official capacity.

## ALLEGATIONS

12.    Plaintiff brings this action, seeking equitable and injunctive relief on their behalf ("Injunctive"):

> Patient is currently civilly committed in the Minnesota Sex Offender Program as a Sexually Dangerous Persons ("SDP") pursuant to Minn. Stat. § 253D having sustained injunctive damages through the actions and omissions of Defendants in their individual capacity.

13.    Plaintiff also bring this action seeking compensatory, actual, or nominal damages for the constitutional, statutory, and common law claims on his behalf

("Damages"):

7

Plaintiff is currently civilly committed to the Minnesota Sex Offender Program as a Sexually Dangerous Person ("SDP") pursuant to Minn. Stat. § 253D having sustained compensatory, actual or nominal damages through the actions and omissions of Defendants.

14.    Common questions of law and fact exist as to all. Such questions of law and fact common to include, but not limited to:

   a. Whether Defendants violated Plaintiff' Due Process rights protected by the Fourteenth Amendment to the United States Constitution in the following ways:

   i.    by violating Plaintiffs' rights in such that would give them a realistic opportunity to meet the constitutional requirements to be afforded an opportunity to practice his sincerely held religious rights as others similarly situated in Moose Lake as is afforded in the United States Constitution, RLUIPA, and Minnesota Constitution;

   ii.    Whether Defendants violated Plaintiffs' right to Freedom of Expression and religious exercise as protected by the First Amendment to the United States Constitution and RLUIPA;

15.    Plaintiffs' claims are typical claims.  Plaintiff is affected by Defendants' wrongful conduct.

16.    Plaintiff's claims arise out of the same common course of conduct giving rise to the claims.  Plaintiff's interests are equivalent with that of the common citizen of the United States of America, and are not antagonistic to the Defendants.  The questions of law and fact common to predominate over any questions affecting Plaintiff including legal and factual issues relating to liability and damages.

17.     Plaintiff has suffered harm and actual or nominal damages as a result of Defendants' wrongful conduct as alleged herein such as not being able to practice the dictates of his faith as others who are similarly situated.  Absent representative action, Plaintiff will continue to suffer, thereby allowing Defendants' violation of law to proceed without remedy.

## FACTS

18.     Daywitt, an observant Sephardic Jewish patient, attempts to observe to the dictates of his faith as much as possible within the environment he lives for all aspects of his life.

19.     Daywitt is committed to the Department of Human Services (DHS) as a Sexually Dangerous Person (SDP) in accordance with Minn. Stat. §253B.185 and has been since June 15, 2009.

20.     Daywitt was the main force behind MSOP finding a rabbi and implementing Jewish services and studies.

21.     Daywitt filed a lawsuit, Case No. 14-cv-4526, which resulted in a settlement agreement that amongst other things allows Daywitt to live stream (one) 1 Shabbat service monthly, and all Holy Day services.

22.     Daywitt also filed another lawsuit against the MSOP because it interfered with the exercise of his faith by classifying absences from treatment groups and psycho-educational modules on religious holy days as unexcused which in turn affected his

livelihood from his vocational placement, the program would reduce his hours at his vocational placement for missing days in treatment.

23. That case, 16-cv-2541, resulted in a settlement agreement which allows him to miss a certain amount of days each quarter which he may shift if necessary to account for different times of the year as Jewish Holy Days move around year to year unlike traditional "Christian" holidays.

24. Daywitt was advantageous in finding a rabbi who would be willing to provide services and programming that fit closely to his school of thought while at the MSOP in Moose Lake.

25. Daywitt utilized his connections to the Jewish community in the Metro region to obtain a rabbi who purported the same or similar school of thought and adherence to the Halakhah (Jewish law).

26. Daywitt was instrumental in getting the necessary items needed for the Jewish group in Moose Lake to adequately practice his faith.

27. The Jewish group in Moose Lake was and is afforded the opportunity to have many different provisions such as: apples and honey for Rosh Hashanah, sufganiyyot (fried

donuts) for Hanukkah, and cheesecake for Shav'uot[1].   Daywitt has been denied from having these same items since his transfer to St. Peter.

28.    That the Moose Lake group is able to have a Sukkah[2] and Lulav/Etrog[3] for the holy days of Sukkot[4], Daywitt is not allowed to have these at St. Peter because there is not an established Jewish group.

29.    The Jewish group in Moose Lake has two different volunteer rabbis' that visit and provide services to the facility three times per month plus the monthly streaming service.

30.    Since Daywitt's transfer to St. Peter, he has not been able to enjoy the same, causing his spiritual self (neshamah) to lack greatly which in turn affects his treatment therapy.

31.    Daywitt, prior to his transfer to St. Peter, submitted a proposal to the Volunteer Services Coordinator at Moose Lake, David Clanaugh, on November 21, 2021 proposing that he be allowed to interact with the Jewish group in Moose Lake via Vidyo Interactive TV (ITV) when he transfers to St. Peter, for activities such as when the rabbi came,

---

[1] The festival celebrating G-d giving Moshe the Torah.  It is a custom to eat dairy products on Shavuot because the Torah is compared to milk (Song of Solomon 4:11). Cheesecake is symbolic as it has 3 parts to it similar to the Hebrew Bible (Torah, Nevi'im/prophets, Ketuvim/writings).

[2] Temporary dwelling that is used to consume meals in, pray the daily prayers, and in some cases dwelled in during the 8 days of Sukkot.

[3] The four species mentioned in Leviticus 23:40-42 which consists of a palm frond, a willow branch, a myrtle branch and a citron when put together the lulav resembles the spine, the etrog; the heart, the myrtle leaves, the eyes; and the willow leaves the mouth. (Continued from previous) Therefore one should submit these organs, and all the others, to the service of G-d, in accordance with Psalms 35:10.

[4] An eight day festival that commemorates the tents in which the Children of Israel dwelt in in the wilderness after the Exodus from Egypt.

Friday night candle lighting (Kiddush and Ha'motzi), Saturday Havdalah[5] (closing Shabbat) ceremony, and other activities.

32.    Each of the above mentioned, with the exception of the rabbi coming, requires a person who is Jewish to conduct the activity. None of the patients in the Jewish Group at Moose Lake are Jewish by birth or conversion, hence why Daywitt suggested that he be able to attend via ITV.

33.    Daywitt obtained emails from the MSOP where he learned that this proposal was talked about and was immediately denied as not being an available option due to concerns of between sites involvement.

34.    Daywitt submitted a request to Defendant Clark requesting he be able to attend studies and activities via ITV, but was told via response cross-site religious services will not be allowed. Please follow group requirement in Spiritual Practices policy if you wish to start a group at St. Peter.

35.    St. Peter does not have the necessary amount of people to start a Jewish group, as *MSOP Spiritual Practices policy* requires at least 6 people submit a *Client Request* with written expressions of interest in a potential spiritual group.

---

[5] Literally means "*distinction*" it is a blessing recited at the termination of Sabbaths and festivals, in order to emphasize the distinction between the sacred and the ordinary.

36.   Daywitt reached out to a rabbi at the Jewish Family Services of St. Paul, Rabbi Lynn Liberman, asking for assistance. She responded, stating the drive was too far however, she would be willing to meet with Daywitt via a Zoom like platform.

37.   Daywitt submitted a request to Defendant Clark stating information immediately *supra* and gave Defendant Clark's contact information to Rabbi Liberman to reach out to Clark. Clark responded to Daywitt's request stating individual services are not allowed.

38.   In the interim Rabbi Liberman, after sending an email to Clark seeking clarification on how she may assist, sent Daywitt study materials through the mail which were denied at the facility because they were portions of a book that were printed off the internet.

39.   MSOP stated that Daywitt need to purchase the book if he wanted the materials. They continued, materials printed off the internet or copied from books is not allowed, even after Clark had told Liberman she could send these materials.

40.   Daywitt appealed this decision through the process, however, was not successful in his appeal, even though Defendants have told Daywitt and this Court in another matter, he and his co-Plaintiffs were able to receive materials printed off the internet, which this Court used as partial reason to dismiss the complaint in summary judgment, in the other matter.

41.    Since being in St. Peter, Daywitt's treatment has suffered from not having an interactive component of faith involved in his life as was the case previously, while in Moose Lake.

42.    Daywitt's faith is an intricate piece of his character and is imperative to his mental prosperity and wellbeing.

43.    Daywitt had to literally argue with defendant Clark to be able to stream the 2022 Hoshana Rabba service.  Clark stated the service did not fall within the guidelines of the settlement agreement (14-cv-4526) for a streaming event.  It wasn't until the Friday before the service Daywitt was informed he would be able to attend to the service via livestream.

44.    There have been times when Daywitt has not been able to have a service streamed due to technical issues either by MSOP and/or the synagogue.  Daywitt requested that the facility do similar to what Moose Lake had done while he was there and find alternate synagogues to utilize for these times.  He even went so far as to make a suggestion that would be appropriate and were already approved at Moose Lake.  Daywitt was told that the settlement clearly states Beth El must be used.

45.    Daywitt requested Passover meals be served to him during the eight days in 2022. He was not successful in receiving these meals. MSOP responded with you will have to eat the Kosher meals you are currently being served.

14

46.  Daywitt went without meals during these eight days as there was no food that was available to him that met Kosher for Passover standards.

47.  Again in 2023, Daywitt requested Kosher for Passover Meals to no avail.

48.  Defendant Clark first responded to him telling him he would be required to eat the kosher meals that were already procured by the facility.

49.  Daywitt responded stating those meals are not *Kosher for Passover* and would not be sufficient for him to eat.  He provided evidence of such, and Defendant Clark reached out to Moose Lake's volunteer rabbi.

50.  Daywitt finally received a response allowing him to purchase his own meals with only a few days until Passover was to commence.  This led to him having to take the remnants of what was left at the Kosher Spot an Orthodox Jewish grocer in St. Louis Park.

51.  Daywitt was required to pay for and provide for himself his own *Kosher for Passover* meals for Passover 2023, because the St. Peter facility failed to arrange meals that do not contain any hamez[6].

---

[6] Any foodstuff containing flour that has fermented (such as breads, cakes, and pasta), and dough made from wheat, barley, rye, spelt, and oats.  It is said: Exodus 12: 15: "Seven days you shall eat unleavened bread (*mazzot*); on the first day you shall remove leaven (*se'or*) from your houses, for whoever eats (*hamez*) from the first day to the seventh day that person shall be cut off from Israel."

52.   Daywitt has also been prohibited from being able to partake in the Passover Seder in 2022 and 2023 due to same or similar restrictions placed on him as to why he is not able to get the apples and honey for Rosh Hashanah, or sufganiyyot for Hanukkah, or cheesecake for Shav'uot.

53.   Daywitt submitted requests to both Defendants Leskey and Paro requesting the ability to order apples and honey from the Kosher Spot for the 2023 Rosh Hashanah holiday, but was denied stating this is a request for groups, not an individual practitioner request and therefore it will be denied.

54.   Daywitt again submitted a request in November of 2023 requesting permission to order sufganiyyot from the Kosher Spot, he was told to follow policy.

55.   Daywitt followed policy by submitting the request, requesting the opportunity to purchase these items.  MSOP's Spiritual Practices policy clearly states on page 7 § 3(a): "Clients may order spiritual items (other than herbs, minerals or durable goods) from a vendor with a documented pre-approved Client Request (420-5099a) from the facility volunteer services coordinator/designee. Herbs, minerals, or durable goods must be ordered from an approved vendor."

56.   Daywitt then followed the chain of communication to the Clinical Programming Director, requesting to appeal the statement stating that he should follow policy.  He received that response back from Defendant Nies who said that because he is a single practitioner and not a group he does not qualify to get these items.

16

57.    When Daywitt followed the policy requirements, it was reiterated to follow policy. This is exactly what he did, yet he was denied his right to order these items.

58.    Daywitt filed a grievance on the issue, which was forwarded to Defendant Todd-Bense in December of 2023, which was dismissed with reasons given being that Daywitt should follow policy and that it was not supported because of policy reasons.

59.    The specific issues he brought in the grievance was related to the food items and him being unable to self-purchase those items for the specified corresponding holy days which is currently allowed for patients at the MSOP in Moose Lake.

60.    Daywitt then filed an appeal to the grievance which went to Defendant Latuseck, for the same reasons as the grievance, however, this was also denied for similar reasons the grievance was denied.

61.    Daywitt advocated to garner access to religious services through the ITV when the rabbis attend the Moose Lake facility through request. Daywitt requested he be afforded opportunity to attend those meetings via ITV.

62.    The new VSC, Kayla Evers, responded to this request stating this was a good idea, and she would forward this idea for further conversation, and get back to Daywitt when she had an answer.

63.     Defendants' have been very reluctant to allow Daywitt the opportunity to have same rights as those who are similarly situated and belong to an established religious group at the MSOP in St. Peter.

64.     Daywitt went so far as reaching out to the Jewish Community Relations Council of Minnesota, requesting they get involved in attempting to persuade Defendants into allowing Daywitt accesses to religious materials, activities, et cetera.  He still has heard nothing from Defendants.

65.     Recently, Defendants have stated they are unable to reach any of the contact people at the Beth El Synagogue which has hindered Daywitt from being able to participate in live streamed services as required under settlement.

## CLAIMS

### Count I
**Denial of Freedom of Expression in Violation of the First and Fourteenth Amendments to the United States Constitution, RLUIPA, and Minnesota Constitution.**

66.     Plaintiff incorporates all previous allegations as if fully set forth herein.

67.     The First Amendment guarantees that "[n]o State shall… deprive any person of religious freedom that infringes upon his right to worship or act within the bounds of his religion.

18

68.   The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff bring this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983, 1985 and 1988.

69.   RLUIPA equates to the standard clause of the First Amendment.

70.   The Minnesota Constitution, Article 1 §16 guarantees **the right of every man** to worship God according to the dictates of his own conscience and **shall never be infringed upon.** (*emphasis added)*

71.   Fourteenth Amendment due process requires that the conditions have some reasonable relation to the purpose for which persons are committed. Civilly committed persons may be subjected to liberty restrictions reasonably related to legitimate government interests, that are not synonymous to punishment as determined by reasonable professional judgment.

72.   Fourteenth Amendment Equal Protection is designed to treat those who are similarly situated equally. Plaintiff is in a similar situation as the Jewish population in Moose Lake MSOP, in fact is in a purported less restrictive environment, however, is not receiving similar accommodations.

73.   Civilly committed patients are entitled to some degree of protection under the First Amendment that is broader than that held by prisoners but somewhat less than what is

19

held by members of free society.  Policies or restrictions of First Amendment rights must be reasonably related to legitimate institutional and therapeutic interest(s).

74.   Defendants, in their individual as well as their official capacity, were each aware of the policies and/or *de facto* practices implemented at MSOP, the purpose of which was to harm Plaintiff rather than to assist him and yet they each did nothing to change these policies and practices or to prevent this conduct from occurring and actively participated in such conduct.

75.   Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.  Unless relief is granted, Plaintiff will continue to be injured and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

**COUNT II**
**Denial of Right to Equal Protection in Violation of the First and Fourteenth Amendment of the United States Constitution, RLUIPA and the Minnesota Constitution.**

76.   Plaintiff incorporates all previous allegations as if fully set forth herein.

77.   The First Amendment guarantees that "[n]o State shall… deprive any person of religious freedom that infringes upon his right to worship or act within the bounds of his religion.

78.     The Fourteenth Amendment guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff bring this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983, 1985, and 1988.

79.     The Minnesota Constitution, Article 1 §16 **guarantees the right of every man** to worship God according to the dictates of his own conscience and **<u>shall never be infringed upon</u>**. (emphasis added)

80.     Fourteenth Amendment due process requires that the conditions have some reasonable relation to the purpose for which persons are committed.  Civilly committed persons may be subjected to liberty restrictions reasonably related to legitimate government objectives and that are not synonymous to punishment as determined by reasonable professional judgment.

81.     Civilly committed patients are entitled to some degree of protection under the First Amendment that is broader than that held by prisoners but somewhat less than what is held by members of free society.  Policies or restrictions of First Amendment rights must be reasonably related to legitimate institutional and therapeutic interest(s).

82.   Based on the policy and procedures created and implemented by Defendants, Plaintiff is subjected to limitations that are imposed upon his religious obligations such as those in accordance with Halacha[7].

83.   Defendants, in their individual as well as their official capacity, were each aware of policy that was implemented at the facility and continued to do nothing about it. Therefore, Defendants are liable, in their individual as well as their official capacity.

84.   The acts and omissions of Defendants constitute a deprivation of Plaintiff's clearly established constitutional rights in violation of Plaintiff's rights protected by the Fourteenth Amendment of the United States Constitution , RLUIPA and Article 1, Section 2 of the Minnesota Constitution.

85.   Plaintiff has established a *prima facie* case in this matter under RLUIPA as is described in *Sisney v. Reisch* 533 F. Supp. 2d 952 (8th Cir. 2008).

86.   Plaintiff has been subject to and injured by these alleged violations and suffered damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.  Unless relief is granted, Plaintiff will continue to be injured and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

---

[7] Halacha- Jewish Law.

**COUNT III**
**Inhumane Treatment in Violation of the First and Fourteenth Amendments to the United States Constitution and the Minnesota Constitution**

87.     Plaintiff incorporates all previous allegations as if fully set forth herein.

88.     The First Amendment guarantees that "[n]o State shall... deprive any person of religious freedom that infringes upon his right to worship or act within the bounds of his religion.

89.     The Fourteenth Amendment guarantees that "[n]o State shall . . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Plaintiff bring this Fourteenth Amendment claim pursuant to 42 U.S.C. § 1983, 1985, and 1988.

90.     Fourteenth Amendment due process requires that the conditions have some reasonable relation to the purpose for which persons are committed. Civilly committed persons may be subjected to liberty restrictions reasonably related to legitimate government objectives and that are not synonymous to punishment as determined by reasonable professional judgment.

91.     Civilly committed patients are entitled to some degree of protection under the First Amendment that is broader than that held by prisoners but somewhat less than what is held by members of free society.  Policies or restrictions of First Amendment rights must be reasonably related to legitimate institutional and therapeutic interest(s).

23

92.     Defendants, in their individual as well as their official capacity, have each subjected Daywitt to inhumane treatment through the deprivation of adequate religious services. Therefore, Defendants are liable in both their individual and official capacity, and actively participated in such conduct.

93.     The acts and omissions of Defendants constitute a deprivation of Plaintiff's clearly established constitutional rights in violation of Plaintiff's rights protected by the First and Fourteenth Amendments of the United States Constitution, Article 1, Section 5 of the Minnesota Constitution.

94.     Plaintiff has been subject to and injured by these alleged violations and suffer damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.  Unless relief is granted, Plaintiff will continue to be injured and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

**COUNT IV**
**Violation of Plaintiff's Right to Free Exercise of Religion Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.**

95.     Plaintiff incorporates all previous allegations as if fully set forth herein.

96.     The Fourteenth Amendment guarantees that Plaintiff's right to the Free Exercise of Religion shall not be infringed upon.

24

97.   Civilly committed patients are entitled to some degree of protection under the Fourteenth Amendment that is broader than that held by prisoners but somewhat less than what is held by members of free society.  Policies or restrictions of Fourteenth Amendment rights must be reasonably related to legitimate institutional and therapeutic interest(s).

98.   Equal protection claims arising from alleged unequal treatment of religious practices by the government are violations of the Fourteenth Amendment.

99.   Defendants, in their individual as well as their official capacity, have each subjected Daywitt to deprivation of adequate religious services.  Therefore, Defendants are liable in both their individual and official capacity, and actively participated in such conduct.

100.   The acts and omissions of Defendants constitute a deprivation of Plaintiff's clearly established constitutional rights in violation of Plaintiff's rights protected by the First and Fourteenth Amendments of the United States Constitution, Article 1, Section 5 of the Minnesota Constitution.

101.   Plaintiff has been subject to and injured by these alleged violations and suffer damages as a direct and proximate result of Defendants' acts and omissions as specifically set forth above.  Unless relief is granted, Plaintiff will continue to be injured and suffer damages as a direct and proximate result of Defendants' acts and omissions specifically set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff pray for relief as follows:

a. That the unlawful conduct alleged herein be declared to be illegal and in violation of the federal and state constitution, statutory and common law claims alleged herein;

b. That Defendants be enjoined from engaging in the same or similar practices alleged herein;

c. That the Court Order Defendants to provide injunctive relief, in the form of being able to attend religious activities via ITV with the Moose Lake Jewish Group,

d. That Daywitt be afforded same privileges as Jewish group in Moose Lake as related to holiday food items;

e. That Plaintiff recovers compensatory, actual or nominal damages, as provided by law, determined to have been sustained to him in the amount of $300,000.00 for each violation, and that judgment be entered against Defendants on behalf of the Plaintiff;

f. That Plaintiff receives pre-judgment and post-judgment interest as allowed by law;

g. That Plaintiff recover costs of the suit and expenses as allowed by law; and

h. All other relief allowed by law and equity.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff **demands**

**a trial by jury on all issues so triable.**


Dated: January 17, 2024

/S/: Kenneth Steven Daywitt
Kenneth Steven Daywitt- Pro se
100 Freeman Drive
St. Peter, MN 56082